## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | | |
| **ALAN R. STUART** | : | **Chapter 13** |
|     Debtor(s) | : | |
| _____ | : | **Bky. No. 05-19154ELF** |
| | : | |
| **ALAN R. STUART** | : | |
| **ELIZABETH T. STUART** | : | |
|     Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | **Adv. No. 05-459ELF** |
| **DECISION ONE MORTGAGE CO, LLC, et al.** | : | |
| **RFC HOMECOMINGS FINANCIAL** | : | |
| **LINCOLN MORTGAGE ASSOCIATES, LLC** | : | |
|     Defendants | : | |
| _____ | : | |

## MEMORANDUM OPINION

**BY:  ERIC L. FRANK,  U.S.  BANKRUPTCY JUDGE**

### I.  INTRODUCTION

In this adversary proceeding, the Plaintiffs assert claims for violations of federal and state consumer protection statutes.  The claims arise from a mortgage refinancing transaction in connection with the Plaintiffs' primary residence. The three (3) defendants are a mortgage broker, the original mortgage lender and the lender's assignee.

Before me are summary judgment motions filed by the mortgage lender and the lender's assignee.  The movants' primary arguments are that (1) the court lacks subject matter jurisdiction to hear the merits of the Plaintiffs' federal claim on the basis of the <u>Rooker-Feldman</u> doctrine and

1

(2) to the extent that there may be federal jurisdiction, the Plaintiffs' claims are without merit as a matter of law.

For the reasons stated more fully in this Memorandum, I will grant the motions for summary judgment in part, and deny them in part.

## II. BACKGROUND AND PROCEDURAL HISTORY

The Debtor in this case, Alan R. Stuart, and his spouse Elizabeth Stuart (collectively, "the Plaintiffs"), refinanced their home mortgage in a loan transaction that took place in January 2004 ("the Transaction").[1] Lincoln Mortgage Associates, LLC ("Lincoln Mortgage") was the mortgage broker involved in the Transaction. Decision One Mortgage Company, LLC ("Decision One") was the original mortgagee. Decision One subsequently assigned the refinancing loan to the third defendant, RFC Homecomings Financial ("Homecomings").

By June 2004, the Plaintiffs defaulted in their mortgage payments. On February 28, 2005, Mortgage Electronic Registration Systems, Inc. initiated foreclosure proceedings against the Plaintiffs in the Chester County Court of Common Pleas.[2] On April 20, 2005, the Common Pleas Court entered a judgment by default in mortgage foreclosure. The Plaintiffs subsequently were served a notice of a scheduled sheriff's sale of their residence.

---

[1] The address of the subject property is 579 Gramercy Lane, Downingtown, Pennsylvania, 19335.

[2] Although not raised by any party, it is likely that Mortgage Electronic Registration Systems, Inc. ("MERS"), acted as a nominee for Homecomings in the mortgage foreclosure proceedings. See In re Huggins, 357 B.R. 180 (Bankr. D. Mass. 2006). The Plaintiff has not explored the issue whether MERS, Homecomings or Decision One is the judgment holder and the extent to which, if any, that the issue has any bearing on disposition of the summary judgment motions. Therefore, I will not consider it an issue in my legal analysis below.

On May 9, 2005, the Plaintiffs' counsel sent a letter to Decision One purporting to exercise the Plaintiffs' right to rescind the Transaction pursuant the federal Truth in Lending Act, 15 U.S.C. §§1601, et seq. ("TILA").   In a letter dated May 31, 2005, counsel for Decision One responded by declining the Plaintiffs' request for rescission and stating that the disclosures the Plaintiffs received "were compliant with TILA in all respects."

The Debtor filed a bankruptcy petition under chapter 13 of the Bankruptcy Code on July 6, 2005.  Shortly thereafter, on July 13, 2005, the Plaintiffs filed the complaint in this adversary proceeding ("the Complaint") against Decision One, Homecomings and Lincoln Mortgage. The Complaint contains the following three (3) counts.

In Count I, the Plaintiffs seek judicial enforcement of their rescission of the Transaction under 15 U.S.C. §1635(b).  Pursuant to §§1640(a)(2)(A)(iii) and (a)(3), they request statutory damages, attorney's fees and costs due to the defendants' failure to rescind.[3]  The Plaintiffs assert

---

[3]  The parties briefed the issues as if the Plaintiffs were asserting both: (1) the affirmative claim for the TILA civil penalty for the creditors' failure to comply with their obligations after receiving the Plaintiffs' notice of rescission, as described above in the text; and (2) a claim for assessment of the TILA civil penalty in recoupment based on the failure to make the required TILA disclosures at the inception of the Transaction.  However, I read Count I of the Complaint as requesting statutory damages only for the failure to rescind.  I do not read it to seek damages in recoupment for making improper TILA disclosures.

Paragraph 16 of the Plaintiffs' Complaint states:

> The Plaintiffs have validly exercised their right to rescind this transaction, but Decision One and Homecomings **have improperly refused to recognize same or perform any of their duties under 15 U.S.C. § 1635(b) of the TILA**.  As a result, the Defendants are not only obliged to perform those duties, but are also liable to the Plaintiffs for statutory damages for refusing to do so.  (emphasis added).

Further, the Plaintiffs' prayer for relief for Count I states:

that they are entitled to rescission due to the existence of material violations of the TILA

disclosure requirements in the Transaction. Specifically, the Plaintiffs allege that Decision One

failed to properly disclose certain terms of the transaction, particularly finance charges, and failed

to provide the Plaintiffs with two copies of the Notice of Right to Cancel.[4]

In Count II, the Plaintiffs assert a state law claim under the Pennsylvania Credit Services

Act, 73 Pa. C.S. § 2183(3), ("the Credit Services Act") against all of the defendants.

In Count III, the Plaintiffs assert a state law claim under the Pennsylvania Unfair Trade

Practices and Consumer Protection Law, 73 P.S. 201-1, et seq. ("the UTPCPL") against all of the

defendants.[5]

On October 24, 2006 and November 6, 2006, Homecomings and Decision One,

---

WHEREFORE, the Plaintiffs request that Decision One or Homecomings, whomever the current holder of the mortgage may be, be ordered to satisfy its security interests in the Home, desist from making any claim for finance charges arising from this transaction, return all of their payments, be barred from making any claim for payment against the Plaintiffs, and be deemed liable to the Plaintiffs for statutory damages of $2,000, plus all finance charges and fees paid by the Plaintiffs to them, and be directed to pay the undersigned and reasonable attorney's fees and costs pursuant to 15 U.S.C. §§ 1635(b), 1640(a)(2)(A)(iii), and 1640(a)(3) of the TILA.


[4] A consumer is entitled to rescind a transaction until midnight of the third business day following consummation of the transaction. 15 U.S.C. §1635(a). In addition, if the required notice of the consumer's right to rescind or all of the required "material disclosures" have not been delivered to the consumer, the right to rescind "shall expire three years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first." 12 C.F.R. §226.23(a)(3). The term "material disclosures" means the required disclosure of the annual percentage rate, the finance charge, the amount financed, the total of payments, the payment schedule and, for certain transactions, the disclosures required by 12 C.F.R. §226.32(c) and (d). Id. §226.23(a)(3) n.48.

[5] Unlike Counts II and III, Count I is asserted only against Decision One and Homecomings.

respectively, filed motions for summary judgment on all three counts.  Lincoln Mortgage did not

file any such motion. The Plaintiffs filed timely responses. On December 14, 2006, I held a

combined hearing on Homecomings' and Decision One's motions.  I took the matter under

advisement at the close of the hearing.


## III.  DISCUSSION

### A.  Legal Standard - Summary Judgment

Federal Rule of Bankruptcy Procedure 7056 incorporates Federal Rule of Civil Procedure

56 governing summary judgment.  The standards for evaluating a motion for summary judgment

under Fed. R. Civ. P. 56 are well established and have been stated in numerous written opinions

in this district.  E.g., In re Klayman, 333 B.R. 695 (Bankr. E.D. Pa. 2005); In re LaCheen, 2005

WL 1155257 (Bankr. E.D. Pa. April 28, 2005) (Sigmund, Ch. J.); In re Lewis, 290 B.R. 541

(Bankr. E.D. Pa. 2003) (per Carey, J.); In re Newman, 304 B.R. 188 (Bankr. E.D. Pa. 2002) (per

Fox, Ch. J.).

Pursuant to Rule 56, summary judgment should be granted when the "pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law."  Before a motion for summary judgment may be

granted, the court must find that the motion alleges facts which, if proven at trial, would require a

directed verdict in favor of the movant.  See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115

(11th Cir.1993).  If the movant meets this initial burden, the responding party may not rest on his

5

pleadings, but must designate specific factual averments through the use of affidavits or other

permissible evidentiary material that demonstrate a triable factual dispute.[6]  Celotex Corp. v.

Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553 (1986); Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 247-50, 106 S.Ct. 2505, 2510-11 (1986).  Such evidence must be sufficient to support

a jury's factual determination in favor of the nonmoving party.  Id.  Evidence that merely raises

some metaphysical doubt regarding the validity of a material facts is insufficient.  Matsushita

Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986).  If

the party opposing the motion believes that summary judgment is premature, Rule 56(f) requires

the party to present by affidavit the reasons why the party is presently unable to submit evidence

in opposition to the motion.  Celotex, 477 U.S. at 326, 106 S.Ct. at 2554.

   In its consideration of the evidentiary matter submitted in support and in opposition to a

motion for summary judgment, the court's role is not to weigh the evidence but only to determine

whether there is a disputed, material fact for determination at trial.  Anderson v. Liberty Lobby,

---

[6]   The respective burdens of proof of the parties also play a role in determining the
merits of a summary judgment motion:

> [W]here the movant is the defendant, or the party without the burden of proof on
> the underlying claim, the movant still has the initial burden of showing the court
> the absence of a genuine issue of material fact, but that this does not require the
> movant to support the motion with affidavits or other materials that negated the
> opponent's claim. In contrast, where . . .  "the party moving for summary judgment
> is the plaintiff, or the party who bears the burden of proof at trial, the standard is
> more stringent."  National State Bank v. Federal Reserve Bank, 979 F.2d 1579,
> 1582 (3d Cir.1992).

In re Newman, 304 B.R. at 193 (quoting  Adams v. Consolidated Rail Corp., 1994 WL 383633,
*1-*2 (E.D. Pa. July 22, 1994).

<u>Inc.</u>, 477 U.S. at 247-50, 106 S. Ct. at 2510-11.  All reasonable inferences must be drawn in

favor of the nonmoving party and against the movant.  <u>United States v. Premises Known as 717</u>

<u>South Woodward Street</u>, 2 F.3d 529, 533 (3d Cir.1993).

### B.  Summary Judgment Will Be Granted in Favor of *Decision One* and *Homecomings* on Count I

### 1.

As a basis for the entry of summary judgment in their favor, Homecomings and Decision

One assert that this court lacks subject matter jurisdiction over the Plaintiffs' TILA rescission

claim.  They argue that pursuant to the <u>Rooker-Feldman</u> doctrine, the court is precluded from

exercising its jurisdiction because the foreclosure judgment entered in state court against the

Plaintiffs bars the federal court enforcement of a TILA rescission claim. Before considering any

other issues, I am obliged to determine the scope of the court's jurisdiction.  See <u>Packard v.</u>

<u>Provident National Bank,</u> 994 F.2d 1039, 1049 (3d Cir.), <u>cert. denied</u>, 510 U.S. 964, 114 S.Ct.

440 (1993) (federal courts are courts of limited jurisdiction, and as such are under a continuing

duty to satisfy themselves of their jurisdiction before proceeding to the merits of any case).

Derived from the two Supreme Court cases, <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413,

415-16, 44 S.Ct. 149 (1923), and <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S.

462, 483-84, 103 S.Ct. 1303 (1983), the <u>Rooker-Feldman</u> doctrine divests a federal court of

subject matter jurisdiction if the relief requested effectively would reverse a state court decision

or void its ruling.  See, e.g., <u>Turner v. Crawford Square Apartments III, L.P.</u>, 449 F.3d 542, *547

(3d Cir. 2006); <u>In re Knapper</u>, 407 F.3d 573, 580 (3d Cir. 2005).  In effect, the <u>Rooker-Feldman</u>

doctrine prevents "inferior" federal courts from sitting as appellate courts for state court

7

judgments.  Knapper 407 F.3d at 580 (citing Port Auth. Police Benevolent Assoc., Inc. v. Port

Auth. of N.Y. and N.J. Police Dept., 973 F.2d 169, 173 (3d Cir.1992)).

The Rooker-Feldman doctrine is necessarily limited to "cases brought by state-court

losers complaining of injuries caused by state-court judgments rendered before the district court

proceedings commenced and inviting district court review and rejection of those judgments."

Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284, 125 S.Ct. 1517 (2005).  In

explaining this jurisdictional bar, the Third Circuit has described the Rooker-Feldman doctrine as

precluding lower federal court jurisdiction over claims that were actually litigated or those

"inextricably intertwined" with adjudication by a state court.  See  Taliaferro v. Darby Township

Zoning Board, 458 F.3d 181, 192 -193 (3d Cir. 2006).

The recent decision of my colleague, Judge Fox, in In re Randall, 2006 WL 3833919

(Bankr. E.D. Pa. Nov. 1, 2006), is most instructive on this legal issue and is factually similar (but

not identical) to the case at bar.  The Randall debtor commenced an adversary proceeding

alleging that she was entitled, under TILA, to rescission of a mortgage loan transaction and to a

reduction of the mortgagee's bankruptcy claim under the doctrine of recoupment.  The debtor

brought her adversary proceeding in bankruptcy two years after the mortgagee filed the

foreclosure action in state court and received a favorable judgment.  She never raised the alleged

voidability of the mortgage as a defense to the foreclosure action, despite the fact that in April

2003, 1½ years prior to the judgment,[7] she gave the mortgagee notice of her TILA election to

_____

[7]  This is the key factual difference between Randall and this case.  In this case, the
Plaintiffs purported to exercise their TILA right of rescission after the entry of the state court
foreclosure judgment.  Whether this factual difference has any legal significance is discussed in
the text below.

8

rescind the mortgage loan transaction[8].

On a motion to dismiss the adversary proceeding, the Randall defendants raised the

Rooker-Feldman doctrine as a bar to the court exercising jurisdiction.  The court reviewed the

significant distinction in Pennsylvania procedural law between the ability of a mortgagor to

challenge the validity of a mortgage and the mortgagor's inability to assert a monetary,

recoupment or set-off defense based on TILA  in a foreclosure action.  Id. at *5-6.  The court then

described the interrelationship between a foreclosure action and an action to enforce TILA

rescission rights, stating:

> a mortgage foreclosure action is dependent upon the existence of a
> valid mortgage.  A proper claim that a loan has been rescinded
> under section 1635 of TILA has the effect of invalidating the
> mortgage.

---

[8]   15 U.S.C. §1635(b) provides:

> When an obligor exercises his right to rescind under subsection (a) of this section,
> he is not liable for any finance or other charge, and any security interest given by
> the obligor, including any such interest arising by operation of law, becomes void
> upon such a rescission. Within 20 days after receipt of a notice of rescission, the
> creditor shall return to the obligor any money or property given as earnest money,
> downpayment, or otherwise, and shall take any action necessary or appropriate to
> reflect the termination of any security interest created under the transaction. If the
> creditor has delivered any property to the obligor, the obligor may retain
> possession of it. Upon the performance of the creditor's obligations under this
> section, the obligor shall tender the property to the creditor, except that if return of
> the property in kind would be impracticable or inequitable, the obligor shall tender
> its reasonable value. Tender shall be made at the location of the property or at the
> residence of the obligor, at the option of the obligor. If the creditor does not take
> possession of the property within 20 days after tender by the obligor, ownership of
> the property vests in the obligor without obligation on his part to pay for it. The
> procedures prescribed by this subsection shall apply except when otherwise
> ordered by a court.

Accord, 12 C.F.R. §226.23(d).

Id. at *7.[9]

The Randall court found that a federal court determination that the loan transaction was validly rescinded in 2003 would have the effect of reversing the state court foreclosure judgment and rendering it unenforceable.   After explaining, with ample support, that "courts have consistently held that the issue of TILA rescission is 'inextricably intertwined' with a prior judgment in mortgage foreclosure," id. at * 7 (collecting cases), the court concluded that it lacked subject matter jurisdiction over the TILA rescission claim.

The Plaintiffs urge the court to reject Randall and consider recent Supreme Court and Third Circuit authority that they interpret as "severely limiting the scope of the Rooker-Feldman doctrine."  See Debtor's Memorandum of Law in Response to Homecomings's Summary Judgment Motion at 4.  In particular, the Plaintiffs suggest that the concept of "inextricably intertwined" no longer survives because it did not appear in recent Supreme Court decisions,

---

[9]  As the Randall court pointed out, in Pennsylvania, a meritorious complaint in mortgage foreclosure must allege:

> (1) the parties to and the date of the mortgage, and of any assignments, and a statement of the place of record of the mortgage and assignments;
>
> (2) a description of the land subject to the mortgage;
>
> (3) the names, addresses and interest of the defendants in the action and that the present real owner is unknown if the real owner is not made a party;
>
> (4) a specific averment of default;
>
> (5) an itemized statement of the amount due; and
>
> (6) a demand for judgment for the amount due.

Id. at *5 (quoting Pa. R. Civ. P. 1147).

10

Exxon Mobil and Lance; or in Turner, a more recent Third Circuit decision.

The Supreme Court clarified the Rooker-Feldman doctrine in Exxon Mobil when it stated that it should be confined to "cases brought by state-court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil, 544 U.S. at 284. See also Turner, 449 F.3d at 547 (reading Exxon Mobil as emphasizing "the narrow scope" of the Rooker-Feldman doctrine). The Court in Exxon Mobil expressed concern about the misapplication of the doctrine by the federal judiciary. Id. at 283 ("Variously interpreted in the lower courts, the doctrine has sometimes been construed to extend far beyond the contours of the Rooker and Feldman cases, overriding Congress' conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 28 U.S.C. §1738"). Since Exxon Mobil, several circuits have questioned the vitality of the "inextricably intertwined" guidepost. See, e.g., McCormick v. Braverman, 451 F.3d 382, 394-95 (6th Cir. 2006); Boldon v. City of Topeka, Kansas, 441 F.3d 1129 (10th Cir. 2006); Davani v. Virginia Dept. of Transportation, 434 F.3d 712, 719 (4th Cir. 2006); Hoblock v. Albany County Board of Elections, 442 F.3d 77, 86-87 (2d Cir. 2005); see also Thomas D. Rowe, Jr. and Edward L. Baskauskas, "Inextricably Intertwined" Explicable At Last? Rooker-Feldman Analysis After the Supreme Court's Exxon Mobil Decision, 2006 Fed. Cts. L. Rev. 1. (2006).

However, the concept of "inextricably intertwined" remains firmly embedded in the

fabric of Third Circuit jurisprudence even after <u>Exxon-Mobil</u>.[10]  I am mindful that any decision

to follow the changing tide and declare that the "inextricably intertwined" concept is obsolete

must come from the Court of Appeals and not from a trial court.  <u>See</u> <u>In re Shaford Companies,</u>

<u>Inc.</u>, 52 B.R. 832, *837 (Bankr. D.N.H. 1985) (in the context of reviewing the Supreme Court's

decision in <u>Northern Pipeline v. Marathon</u>, 458 U.S. 50 (1982), stating that it is inappropriate for

a lower federal court to anticipate any modification by superior courts "when the precise effect of

---

[10] In <u>Taliaferro v. Darby Township Zoning Board</u>, the Third Circuit recited the <u>Rooker-Feldman</u> doctrine as follows:

> In explaining the jurisdictional bar, this Court has described the
> <u>Rooker-Feldman</u> doctrine as precluding lower federal court
> jurisdiction over claims that were actually litigated or those
> **"inextricably intertwined"** with adjudication by a state court.
> <u>Parkview Assoc. P'ship v. City of Lebanon</u>, 225 F.3d 321, 325 (3d
> Cir.2000) (citing <u>Gulla v. North Strabane Township</u>, 146 F.3d 168,
> 171 (3d Cir.1998)). **We have further explained that "a federal**
> **action is inextricably intertwined with a state adjudication, and**
> **thus barred in federal court under Feldman, '[w]here federal**
> **relief can only be predicated upon a conviction that the state**
> **court was wrong.' "** <u>Id.</u> (quoting <u>Centifanti v. Nix</u>, 865 F.2d 1422,
> 1430 (3d Cir.1989) (quoting <u>Pennzoil Co. v. Texaco Inc.</u>, 481 U.S.
> 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J.,
> concurring))). <u>See</u> <u>also</u> <u>Exxon Mobil</u>, 544 U.S. at 293, 125 S.Ct.
> 1517 ("In parallel litigation, a federal court may be bound to
> recognize the claim- and issue-preclusive effects of a state-court
> judgment," but the federal court is divested of jurisdiction under
> <u>Rooker-Feldman</u> only where it is asked to redress injuries caused
> by an unfavorable state-court judgment.).

458 F.3d at 192 -193 (emphasis added); <u>see</u> <u>also</u> <u>Turner v. Crawford Square Apartments III, L.P.</u>,
449 F.3d 542, *547 (3d Cir. 2006) ("Such action is barred by <u>Rooker - Feldman</u>, as the
constitutional claims at issue in this case are inextricably intertwined with the state court's
decision...."); <u>Korelis v. New Jersey Judicial Officials in Court Process Action</u>, 2006 WL
3051793, at *1 n. 1(3d Cir. Oct. 26, 2006) (not precedential); <u>In re Barnes</u>, 2006 WL 1602545, at
*1 (3d Cir. June 7, 2006) (not precedential); <u>Kepoint Preservation Trust Org. ex rel. Brown v.</u>
<u>Fisher</u>, 2006 WL 861216,at *1 (3d Cir. April 4, 2006)

their actual holding is clear").

Further, I am persuaded by Judge Fox's decision in <u>Randall</u>, as well as the TILA

decisions of other judges in this district that adopted the <u>Randall</u> analysis and held that the

bankruptcy court lacks jurisdiction to consider a claim to enforce TILA rescission rights if a

judgment in foreclosure has been entered prior to exercising rescission rights under TILA.  <u>See</u> <u>In</u>

<u>re Cooley</u>, 2007 WL 781952 (Bankr. E.D. Pa. March 13, 2007) (FitzSimon, J.); <u>In re Madera</u>,

2007 WL 521323, at *4 (Bankr. E.D. Pa. Feb. 8, 2007) (Sigmund, C.J.);  <u>see</u> <u>also</u> <u>In re Faust</u>, 353

B.R. 94, 100 (Bankr. E.D. Pa.2006) (Raslavich, J.) (applying <u>Rooker-Feldman</u> to a rescission

claim under the UTPCPL).


## 2.

This case is slightly different procedurally from <u>Randall</u>, however.  In <u>Randall</u>, the Debtor

exercised her right to rescind prior to the foreclosure action, but did not raise it as a defense in

the litigation.  Here, although the Plaintiffs could have exercised their purported TILA right to

rescind earlier, they did not send their notice of rescission to One until <u>after</u> the default judgment

in foreclosure was entered against them.  Consequently, the Plaintiffs argue that their right to

rescind is a claim independent from the statue foreclosure action, that the three (3) year right to

rescind was never cut off by the foreclosure judgment and that therefore, the claim is viable now

in federal court.

I do not perceive the different procedural posture (that the Plaintiffs here exercised their

right of rescission after the entry of the foreclosure judgment rather than prior to its entry) as

altering the application of  <u>Rooker-Feldman</u>.  As explained by a leading treatise, the relevant

inquiry in determining whether a claim is "inextricably intertwined" for purposes of jurisdiction,

is essentially remedy-based:

> Under this understanding of the role of the "inextricably
> intertwined" analysis, it appears that the *relief sought* (as opposed
> to the *issues raised*) by the federal plaintiff will be particularly
> significant in determining whether the Rooker-Feldman doctrine
> applies.  This is because there would be no need to consider
> whether the *issues raised* in a federal suit are "inextricably
> intertwined" with the state-court judgment unless the *relief sought*
> includes the review and rejection of the state-court judgment.  For
> example, if the plaintiff seeks relief from the effects of a state-court
> judgment, such as an expungement of a criminal conviction, the
> federal action is barred. On the other hand, if the plaintiff seeks
> relief independent of the state-court judgment, such as a
> declaration that the statute on which the conviction was based is
> facially unconstitutional, the action is not barred.

18-133 Moore's Federal Practice Civil §133.30 (emphasis in original) (quoted in Randall, 2006

WL 3833919, at *5).

The "remedy-based" focus of the Rooker-Feldman doctrine compels the conclusion that

this court lacks jurisdiction over the Plaintiffs' request for judicial enforcement of their

rescission of the mortgage, even though the Plaintiffs first exercised the right to rescind after the

entry of the state court foreclosure judgment.  Regardless when the alleged right of rescission

demand was exercised, the remedy requested by the Plaintiffs in federal court includes the

invalidation of the mortgage which was the subject of the state court foreclosure judgment, that

judgment being  "dependent upon the existence of a valid mortgage." Randall,  2006 WL

3833919, at *7.

**3.**

In order to determine the scope of the court's jurisdiction with respect to the Plaintiffs'

entire claim for enforcement of their asserted TILA right of rescission, I must also consider

whether the Rooker-Feldman doctrine deprives the court of jurisdiction with respect to TILA-

based rescission remedies other than the voiding of the subject mortgage.  This is because a

claim for enforcement of a TILA notice of rescission involves more than invalidation of the

subject mortgage.[11]

Rescission of the transaction has several consequences.  The consumer is not liable "for

any finance or other charge."  15 U.S.C. §1635(b); 12 C.F.R. §226.23(d). The creditor's security

interest is voided.  The creditor is obliged to terminate the security interest within twenty (20)

calendar days of receipt of the notice by which the consumer exercises the right of rescission.

On its face, the statute provides that after the creditor has performed its rescission obligations,

the consumer must return to the creditor the property he received or its reasonable value ("the

Consumer's Tender Obligation").   See, e.g., Celona v. Equitable National Bank, 98 B.R. 705,

707 (E.D. Pa. 1989).  Finally, the statute provides that the rescission "procedures prescribed [by

§1635(b)] shall apply except when otherwise ordered by a court.  15 U.S.C. §1635(b); accord,

12 C.F.R. §226.23(d)(4).

Courts exercising the power to modify the statutory rescission procedures frequently

have conditioned the termination of the creditor's security interest upon performance of the

---

[11]  Indeed, it is not entirely accurate to refer to a rescission of "the mortgage" under TILA.
More precisely, TILA and Regulation Z refer to the consumer's "right to rescind **the
transaction**," not the right to rescind "the mortgage."  15 U.S.C. §1635(a); 12 C.F.R. §226.23(a).

Consumer's Tender Obligation.  Robert Murken, *Can't Get No Satisfaction? Revising How Courts Rescind Home Equity Loans under the Truth in Lending Act*, 77 Temp. L. Rev. 457 (2004).  Some courts have invoked their equitable discretion to grant the consumer the opportunity to pay the Consumer's Tender Obligation over an extended period of time, in effect, restructuring the mortgage to take into account the elimination of the finance charges as a result of the rescission of the transaction.  See  In re Sterten, 352 B.R. 380, 387-88 (Bankr. E.D. Pa. 2006) & authorities cited therein,  rev'd on other grounds, 2007 WL 867091 (E.D. Pa. March 22, 2007).

This brief description of the TILA rescission process demonstrates that a valid rescission affects more than the existence and validity of the mortgage granted to the creditor in the subject transaction.  A court enforcing a TILA rescission can leave the mortgage in place while otherwise modifying the debtor-creditor relationship to account for the effects of the rescission.[12]  In addition, a creditor who fails to comply with its obligations following receipt of a valid notice of rescission may be liable for the TILA statutory civil penalty.[13]  Thus, as part of

_____

[12]  The rescission reduces the amount of the consumer's potential monetary liability subject to the Consumer's Tender Obligation, most notably, because a valid rescission relieves the consumer of any liability for payment of finance or other charges incurred in connection with the rescinded transaction. The effect of a valid rescission on the amount of the Consumer's Tender Obligation can be substantial.  For example, if the right of rescission is exercised at a time near the end of the three (3) year period permitted by §1635(a) and the consumer made all, or at least many, of the instalment payments due on the loan, the Consumer's Tender Obligation may be reduced quite substantially because the consumer is not responsible for any finance charges. In effect, all of the payments are applied to the loan principal. By comparison, without rescission, most of the payments made by a consumer in the early years of a loan are applied to the interest which accrues on the declining principal balance, which declines slowly.

[13]  See 15 U.S.C. 1640(a) (imposing liability on "any creditor who fails to comply with any requirement imposed under this chapter, including any requirement under [15 U.S.C. 1635]; id. §1640(a)(3) (authorizing award of costs and a reasonable attorney's fee "in any action in

a legal action to judicially enforce a consumer's TILA right of rescission, a court may determine

the amount of the consumer's liability to the creditor, as well as enter a money judgment against

the creditor under 15 U.S.C. §1640.

Insofar as the Plaintiffs' action in this court would require a determination that their

liability on the mortgage differs (i.e., is less than) the amount of the state court foreclosure

judgment, I conclude that such relief is precluded by Rooker-Feldman.  A determination by this

court that the bankruptcy claim is less than the amount determined by the state court would

"undo the effect of the state court judgment"[14] no less than a federal court determination that the

mortgage is void.[15]  Similarly, any exercise of judicial discretion to modify the Consumer's

Tender Obligation to permit an extended payment period would effectively negate the state

court judgment because a Pennsylvania foreclosure judgment is a determination that the creditor

is entitled to effect a judicial sale of the mortgaged property.[16]  Thus, I conclude that the

bankruptcy court lacks jurisdiction to grant these remedies in an action brought by a consumer

to enforce a TILA rescission.

---

which a person is determined to have a right of rescission under [15 U.S.C. §1635]").

[14] Crutchfield v. Countrywide Home Loans, 389 F.3d 1144 (10th Cir. 2004) (quoted in Randall, 2006 WL 3833919 at *7).

[15] In Pennsylvania, a  mortgage foreclosure judgment must be in a sum certain in order for execution to issue.  Landau v. Western Pennsylvania National Bank, 445 Pa. 217, 282 A.2d 335 (1971).

[16] E.g., Meco Realty Co. v. Burns, 414 Pa. 495, 200 A.2d 869 (1969); Insilco Corp. v. Rayburn, 374 Pa. Super. 362, 543 A.2d 120 (1988).

**4.**

The Plaintiffs' request for the entry of an affirmative money judgment for a creditor's failure to comply with its rescission obligations stands on a different footing.[17]  To the extent that Homecomings and Decision One contend that <u>Rooker-Feldman</u> bars the Plaintiffs' TILA damages claim for the failure to rescind, I disagree.

The entry of a money judgment for the TILA civil penalty is not "inextricably intertwined" with the state foreclosure judgment because the creditor's rights under the foreclosure judgment (<u>i.e.</u>, the mortgage's validity and the right to foreclose) are not impaired if a money judgment is entered against the creditor for violating TILA.  While the existence of the foreclosure judgment creates a significant issue whether the TILA damages claim is barred by the doctrine of <u>res judicata</u>, that defense must be distinguished from a lack of subject matter jurisdiction based on <u>Rooker-Feldman</u>.  <u>See</u> <u>Turner</u>, 449 F.3d at 547-548 ("If a federal plaintiff 'presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . .  then there is jurisdiction and state law determines

---

[17]  For sake of clarity, I point again out that the damage claim to which I refer  (a creditor's wrongful failure to fulfill its obligations following a rescission) is distinct from the damage claim referenced in <u>Randall</u>, 2006 WL 3833919 at *9.  The TILA damage claim in <u>Randall</u> was based on the creditor's failure to make required TILA disclosures.  <u>See also</u> n.3, <u>supra</u>.

   When raised in a bankruptcy case, typically, a claim based on a disclosure violation is time-barred under 15 U.S.C. §1640(e) and is therefore, raised defensively by way of recoupment or set-off against a proof of claim.  Here, the Plaintiffs assert a timely claim for §1640 damages because the conduct at issue (the creditor's failure to rescind the transaction) took place within one year of the filing of the Plaintiffs' Complaint and therefore, could be entitled to the entry of an affirmative judgment in their favor, if subject matter jurisdiction exists.

18

whether the defendant prevails under principles of preclusion.'") (quoting Exxon Mobil, 544

U.S. at 292, 125 S.Ct. at 1527).[18]

Viewed in its proper context, the Plaintiffs' affirmative TILA damages claim for failure

to rescind is relatively insignificant compared to other TILA rescission remedies (and as to

which this court lacks jurisdiction).  It is difficult to envision why the Plaintiffs would litigate

their modest claim for statutory damages apart from the other rescission remedies.  Further, as a

matter of judicial economy, such multiplication of litigation is disfavored.  In short, a possible

by-product of the Rooker-Feldman doctrine is the splitting of a plaintiff's cause of action

between different courts due to the different remedies made available by a particular cause of

action.  In the TILA rescission context in this case, I conclude that TILA claims should not be

split   – the statutory damages claim arising from the creditors' allegedly wrongful failure to

rescind should be decided by the same court which determines the validity of the subject

mortgage and the amount owed by the Plaintiffs.  Therefore, notwithstanding the existence of

jurisdiction, in the exercise of my discretion, in the interest of justice, and in the interest of

---

[18]  In Randall, the court held a TILA recoupment/set-off claim is not barred by Rooker-
Feldman even after the entry of a judgment in mortgage foreclosure because under applicable
Pennsylvania court rules, a debtor is not entitled to assert the TILA recoupment defense in the
state court mortgage foreclosure proceeding. Randall, 2006 WL 3833919, at *5-6.  In the case
sub judice, a  Pennsylvania court would consider a TILA rescission defense in a mortgage
foreclosure action because the defense goes to the validity of the mortgage, see id. at *6 (citing
Green Tree Consumer Discount Co. v. Newton, 909 A.2d 811 (Pa. Super. 2006)).  It is less clear
whether, in a foreclosure case, the state court would also consider granting an affirmative money
judgment under TILA for a creditor's wrongful failure to rescind a mortgage. If not, the claim
could be raised in the bankruptcy court without running afoul of Rooker-Feldman for the same
reasons articulated in Randall.  If a state court would consider an affirmative TILA damage claim
for failure to rescind in a foreclosure proceeding, the claim is still not barred in federal court by
Rooker-Feldman  because the requested relief is not inextricably intertwined with the foreclosure
judgment.

comity with the state courts, I will abstain from hearing the Plaintiffs' claim for TILA damages.

See 28 U.S.C. §1334(c)(1); Bricker v. Martin, 348 B.R. 28, 33 -34 (W.D. Pa. 2006) (abstention

under 28 U.S.C. §1334(c)(1) may be raised by the court sua sponte); In re Greene, 1999 WL

689711, *3 (E.D.Pa. September 7, 1999) (same).[19]


## 5.

To sum up my disposition of Count I, I conclude that the bankruptcy court lacks

jurisdiction to grant most of the relief sought by the Plaintiffs under TILA.  To the extent that

there is jurisdiction, the court will abstain from exercising its jurisdiction. Accordingly,

summary judgment will be granted to both Decision One and Homecomings and Count I of the

Complaint will be dismissed without prejudice.

---

[19]   As a result of this decision, I need not  address the substantive question whether the
Plaintiffs' rescission rights were terminated by the entry of the state foreclosure judgment.  If
those rights survived the entry of the foreclosure judgment, the Plaintiffs' substantive claims may
be viable in state court. On this point, I note the observations of my colleague, Judge FitzSimon.
In referencing Judge Raslavich's remarks that a rescission claim is independent from the
mortgage upon which a foreclosure judgment is based and that it terminates only after the
passage of three years or the sale of the property, Judge FitzSimon commented that the survival
of a TILA claim to enforce rescission after the entry of a foreclosure judgment appears consistent
with the language of TILA.  See In re Cooley, 2007 WL 781952, at *4-5 (citing Apaydin v.
Citibank Federal Savings Bank, 201 B.R. 716 (Bankr. E.D. Pa. 1996)).

       I also point out that in light of Rooker-Feldman, the issue may be of only limited
significance.  If a consumer's right to rescind does not survive the entry of a foreclosure
judgment, the consumer's only recourse may be to seek relief from judgment from the state court
(known in Pennsylvania as a petition to open judgment).  If such relief is granted, the consumer
can then raise the TILA rescission as a defense to foreclosure.  On the other hand, if the right to
rescind survives the entry of a foreclosure judgment, the consumer may be able to request
affirmative relief in state court in a separate proceeding without obtaining relief from the
foreclosure judgment.  Does this distinction matter?  Perhaps in some cases, it will.  These issues
are left to the state court.  Part III.B of this decision addresses only the existence of and the
propriety of exercising federal jurisdiction over the Plaintiffs' TILA claim.

### C. Summary Judgment Will Be Granted to Both *Decision One* and *Homecomings* on Count II

In Count II, the Plaintiffs incorporate all factual allegations of the Complaint, but add two further allegations to support a claim under the Credit Services Act and the Pennsylvania Loan Broker Trade Practices Regulations ("the LBTP") against all three defendants. First, they claim that Lincoln Mortgage, the alleged mortgage broker, " [b]y its role in arranging this transaction to the detriment of the Plaintiffs and [for] the benefit of itself and failing to provide requisite disclosures to the Plaintiffs," engaged in common-law fraud and breached its fiduciary duties. Plaintiffs' Complaint ¶18. The Plaintiffs specifically allege that Lincoln Mortgage violated §§2183(3), (4), 2184, 2185 and 2186 of the Credit Services Act and §§ 305.3(a)(1)-(a)(4) of the LBTP. Second, the Plaintiffs claim that Decision One and Homecomings are subject to the Credit Services Act because of their failures "to rectify the wrongful actions of Lincoln [Mortgage] after same have been brought to their attention." Plaintiffs' Complaintt ¶19.

Summary judgment is warranted to both Decision One and Homecomings on the Credit Services Act and LBTP claims.

The Credit Services Act regulates activities of "credit service organizations" and "loan brokers." In re Balko, 348 B.R. 684, 697 (Bankr. W.D. Pa. 2006). The LBTP establishes what are "unfair methods of competition and unfair or deceptive acts or practices of loan brokers ." 37 Pa. Code. §305.1.

A credit services organization is defined as:

> (1) A person who, with respect to the extension of credit by others, sells, provides or performs or represents that he or she can or will sell, provide or perform any of the following services in return for the payment of money or other valuable consideration:

(i)   Improving a buyer's credit record, history or rating.

(ii)  Obtaining an extension of credit for a buyer.

(iii) Providing advice or assistance to a buyer with regard to either subparagraph
(I) or (ii).

73 P.S. § 2182.   The term specifically excludes "any person organized, chartered or holding a

license or authorization certificate *to make loans or extensions of credit* pursuant to the laws of

the Commonwealth or the United States who is subject to regulation and supervision by an

official or agency of the Commonwealth or the United States." Id.  (emphasis added).  The

specific prohibited activities under the Credit Services Act raised by the Plaintiffs pertain to

activities engaged in by a "credit services organization and its salespersons, agents and

representatives who sell or attempt to sell the services of a credit services organization."  73 P.S.

§ 2183.[20]

---

[20] The relevant sections of the Credit Services Act the Plaintiffs allege Lincoln Mortgage
violated state:

A *credit services organization and its salespersons, agents and representatives who sell
or attempt to sell the services of a credit services organization* shall not:

. . .

(3) Make or counsel or advise any buyer to make any statement which is untrue or
misleading and which is known, or which by the exercise of reasonable care
should be known, to be untrue or misleading, to a consumer credit reporting
agency or to any person who has extended credit to a buyer or to whom a buyer is
applying for an extension of credit with respect to a buyer's creditworthiness,
credit standing or credit capacity.

(4) Make or use any untrue or misleading representations in the offer or sale of the
services of a credit services organization or engage directly or indirectly in any
act, practice or course of business which operates or would operate as a fraud or
deception upon any person in connection with the offer or sale of the services of a
credit services organization.

Similarly, a "loan broker" under the LBTP is defined as:

> A person, copartnership, association or corporation engaged in providing services for the purpose of procuring or attempting to procure a loan on behalf of a borrower where a fee or other valuable consideration is charged for the services. The term does not include a person, copartnership, association or corporation expressly regulated by a regulatory body or officer of this Commonwealth or of the United States, such as State and nationally chartered banks, savings and loan associations and their regulated subsidiaries.

37 Pa. Code § 305.2.

The Plaintiffs' Complaint fails to allege that either Decision One or Homecomings is a credit services organization, salesperson, agent or representative thereof. The Plaintiffs also make no averment in the Complaint or in their response to the summary judgment motions to establish that either defendant is a "loan broker" under the LBTP. Indeed, the Complaint alleges that Decision One is the "original owner/holder of the loan/mortgage at issue" and that Homecomings is believed to be the current holder of the mortgage. See Plaintiffs' Complaint at ¶ 4. Thus, Decision One and Homecomings may well be actually excluded, by definition, from both the Credit Services Act and the LBTP. The failure to allege that Decision One and Homecomings are entities whose conduct is regulated by the respective statutes is fatal to the

---

73 P.S. § 2183 (emphasis added).

The Plaintiffs also allege that Lincoln Mortgage violated the sections of the Credit Services Act pertaining to a **credit service organization's** responsibilities to provide an "information sheet" about its services and fees prior to execution of a contract or prior to receipt of any money. 73 P.S. §§ 2184, 2185. Finally, the Plaintiffs allege that Lincoln Mortgage violated § 2186, which pertains to the requirements for a contract between the buyer and a **credit services organization** for the purchase of the services of the credit services organization. including notice of the buyer's right to cancel the contract within five days of signing. 73 P.S. § 2186.

Plaintiffs' claim.   Moreover, because Homecomings was an assignee of the loan and had no

involvement in this case until after the closing of January 2004 loan, I am unable to discern any

colorable claim that the Plaintiffs may have against Homecomings under the Credit Services Act

or the LBTP.

The Plaintiffs attempt to attribute liability to Decision One and Homecomings for their

failure to rectify the alleged wrongdoing of Lincoln Mortgage.   In other words, the Plaintiffs

assert that Decision One and Homecomings are responsible for alleged violations of the Credit

Services Act and LBTP by Lincoln Mortgage because they learned of Lincoln Mortgage's

improper conduct at some unstated point in time and took no remedial action.   However, the

Plaintiffs have not identified any source of authority for holding a party that is not a credit

service organization liable under Credit Services Act or for holding a party that is not a loan

broker liable under the LBTP.   Therefore, summary judgment will be granted on Count II in

favor of Decision One and Homecomings.[21]


### D.  Summary Judgment Will Be Denied as to Both *Decision One* and *Homecomings* on Count III

In Count III, the Plaintiffs assert a state law claim against all defendants under the

UTPCPL.   The Plaintiffs seek to hold all three defendants jointly and severally liable for treble

the amount of their actual damages, plus reasonable attorneys fees and costs pursuant to 73 P.S.

§ 201-9.2.(a).

---

[21]  The Plaintiffs' Complaint alleges that Lincoln Mortgage is the broker, presumably the
"loan broker" in the transaction at issue pursuant to the Credit Services Act and the LBTP.
Lincoln Mortgage has not moved for summary judgment.  Therefore, the Plaintiffs' Credit
Services Act claim against Lincoln Mortgage is unaffected by this decision.

The Plaintiffs assert that the defendants engaged in a "concerted plan to purport to provide financial services with an intent not to provide same as represented and to knowingly misrepresent that services such as were provided were needed when they were not needed, as well as engaging in fraudulent and deceptive conduct . . . ." Plaintiffs' Complaint at ¶21.

The UTPCPL provisions relied upon by Debtors are the "unfair or deceptive acts or practices" identified in the following subsections of 73 P.S. §201-2(4):

- subsections (v): "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have";

- subsection (xv): "Knowingly misrepresenting that services, replacements or repairs are needed if they are not needed"; and

- subsection (xxi), the general catchall provision, which prohibits "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding."

Notwithstanding the Plaintiffs' identification of their theory of liability and the statutory sections that they allege were violated,  Decision One and Homecomings did little to explain why summary judgment in their favor is warranted.  Rather, in their briefs, they merely incorporated by reference their arguments that the Plaintiffs' alleged TILA violations lack merit.[22]  See Decision One's Memorandum of law in Support for Summary Judgment at 9; Homecomings's Memorandum of Law in Support for Summary Judgment  at 8.  In essence,

---

[22] Both Homecomings and Decision One incorporated their arguments pertaining to the alleged TILA violations to both Count II and Count III.  I was able to dispose of Count II, despite the lack of specificity in the briefing, due to the clear inapplicability of the statute to both Decision One and Homecomings.  However, no such clarity exists for the UTPCPL claims to warrant summary judgment in favor of the defendants.

Decision One and Homecomings seemingly argue that there were no UTPCPL violations because there were no TILA violations.

I am unwilling to dispose of this claim in summary fashion solely on the grounds urged by Decision One and Homecomings.[23]  Based on my reading of the Complaint, I infer that the basis of the Plaintiffs' asserted UTPCPL claim is not based solely on the alleged TILA violations and is far more fact intensive.  Therefore, at this time, I do not decide whether a TILA violation may be a UTPCPL violation[24] or whether a TILA violation was committed.  Summary judgment is denied to both Homecomings and Decision One on Count III.

---

[23] In light of this, I also need not address, at this time, Homecomings's argument that it cannot be liable as an assignee.  Homecomings made this argument only with respect to its potential liability under TILA.  See  Homecomings's Memorandum of Law in Support for Summary Judgment at 11.

[24] There is case law supporting the proposition that a TILA violation may be a UTPCPL violation, see Com. ex rel. Zimmerman v. Nickel, 26 Pa. D. & C.3d 115, 127-131 (C.P. 1983) (TILA violations may constitute the fraudulent conduct under the UTPCPL); In re Milbourne, 108 B.R. 522, 544 (Bankr. E.D. Pa. 1989) (same).

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, the motions for summary judgment of Decision One

Mortgage Company and Homecomings will be granted in part, and denied in part.  Summary

judgment is granted on Counts I and II and denied on Count III.  An Order consistent with this

Memorandum Opinion will be entered.


Date:   **April 6, 2007**        _____
                                     **ERIC L. FRANK**
                                     **U.S. BANKRUPTCY JUDGE**

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE:  
**ALAN R. STUART**                                          :         **Chapter 13**
Debtor(s)                                         :
—————————————————————— :         **Bky. No. 05-19154ELF**
                                                              :
**ALAN R. STUART**                                          :
**ELIZABETH T. STUART**                                     :
Plaintiffs                                         :
                                                              :
v.                                                 :
                                                              :         **Adv. No. 05-459ELF**
**DECISION ONE MORTGAGE CO, LLC, et al.** :
**RFC HOMECOMINGS FINANCIAL**                               :
**LINCOLN MORTGAGE ASSOCIATES, LLC**                        :
Defendants                                         :
—————————————————————— :

# O R D E R

       **AND NOW,** upon consideration of the motions for summary judgment of Decision One Mortgage Company, LLC and RFC Homecomings Financial, the responses of the Plaintiffs and for the reasons set forth in the accompanying Memorandum Opinion, it is hereby **ORDERED** that:

1.   The motions for summary judgment will be **GRANTED** in part, and **DENIED** in part.

2.   Summary judgment on Count I is **GRANTED**.

3.   Count I is **DISMISSED WITHOUT PREJUDICE** as to both Decision One Mortgage Company, LLC and RFC Homecomings Financial.

4.   Summary judgment on Count II is **GRANTED**.

5.   Count II is **DISMISSED WITH PREJUDICE** as to both Decision One Mortgage Company, LLC and RFC Homecomings Financial.

6.   Summary judgment on Count III is **DENIED** to both Decision One Mortgage Company, LLC and RFC Homecomings Financial.

Date:   **April 6, 2007**

                                         ——————————————————
                                         **ERIC L. FRANK**
                                       **U.S. BANKRUPTCY JUDGE**